# COUNTY OF PENOBSCOT.

M. 'P. C. WITHERS & *al.,* *Petitioners for Review, versus* SAMUEL
LARRABEE.

A verbal lease of real estate at an annual rent, by the statutes of this State, creates a tenancy at will.

Under the Revised Statutes of 1841, the notice required by law to terminate a tenancy at will, when the rent was payable annually, was three months' notice in writing, to quit at the expiration of that time.

When such a tenancy is terminated by notice by the tenant, he is liable for rent until the expiration of the time fixed for the termination of the tenancy, whether he occupies the premises or not.

The provisions of R. S. of 1841, requiring notice to terminate a tenancy at will, are not contained in the revision of 1857, so that, under the latter, tenancies at will are determinable as at common law, at the will of either party and without notice. [But see c. 199 of laws of 1863.]

The provisions of c. 64, §§ 1 and 2, of R. S. of 1858, relate only to the process of forcible entry and detainer, and the notices required to maintain that process.

The rights of parties to a lease, which accrued before the R. S. of 1858 took effect, are not affected by those statutes.

Where a tenant at will, before the expiration of his tenancy, quits the premises and offers to surrender the key to the landlord, and upon his refusing to receive it, throws it down, and after the tenant has left, the landlord takes it up and retains it, but the premises remain unoccupied during the remainder of the term, the landlord thereby waives no rights, and the tenancy is not determined.

REPORTED from *Nisi Prius.*

PETITION FOR REVIEW of an action, in which the defendant in review recovered of the plaintiffs rent of a store for two quarters.

The original writ was dated Sept. 23, 1856, on account annexed, for balance of rent of a store from Sept. 15, 1855, to Sept. 15, 1856, being $125.

It was proved that Larrabee verbally leased the store, the

rent of which is in controversy, to the plaintiffs in review, for $250 per annum, payable quarterly; that they entered into possession Sept. 15, 1855, and paid the first quarter's rent when due; that, some days *before* the end of the second quarter and *after* they had left the premises, they notified Larrabee they should no longer occupy, and before the expiration of the quarter they paid rent for the second quarter; that, on the 14th of March, 1856, before which the rent for the second quarter had been paid, they offered the key to Larrabee, who refused to take it; that Chase, one of the defendants, threw down the key on the floor, and left; that after he had left, Larrabee took the key and retained it; that plaintiffs in review did not afterwards occupy the premises, and that they remained unoccupied during the year.

Upon this evidence the Court were authorized to render such judgment as the law requires.

*A. Sanborn,* for plaintiffs in review.

*F. A. Wilson,* for defendant in review.

The opinion of the Court was drawn up by

APPLETON, J.— According to the facts, as reported, the petitioners were tenants at will of the defendant. R. S., 1841, c. 95, § 19.

It was held in *Ellis* v. *Paige*, 1 Pick., 43, that a tenant at will is not entitled to notice to quit, and that the tenancy is determinable at the will of either party. The Supreme Court of Massachusetts were divided in opinion in that case, as appears in *Coffin* v. *Lunt*, 2 Pick., 70, but the principles of that decision were fully affirmed in this State, in *Davis* v. *Thompson*, 13 Maine, 209, in which WESTON, C. J., uses the following language:—"It results, as incident to a tenancy at will, that it may be determined at the will of either party; and that neither is to give notice of a future day when the estate shall determine." That either party might at pleasure terminate a tenancy at will, is again recognized as unquestioned law, by SHEPLEY, J., in *Moore* v. *Boyd*, 24 Maine, 243. In a strict

tenancy at will, the right of the landlord to rent is necessarily coëxtensive with the occupation of the tenant. If the latter may, of right, leave at any moment, he cannot be holden for rent after he has left the premises previously occupied.

In the revision of our statutes, in 1841, a new provision was inserted. By c. 95, § 19, it was enacted "that all tenancies at will may be determined by either party, by three months notice, in writing, for that purpose, given to the other party; and, when the rent, due upon such lease, is payable at periods of less than three months, the time of such notice shall be sufficient, if it be equal to the interval between the days of payment; and, in all cases of neglect, a refusal to pay the rent, due on a lease at will, thirty days notice to quit, given in writing by the landlord to the tenant, shall be sufficient to determine the lease."

By § 20 the limitations in the preceding section were declared inapplicable to cases of forcible entry and detainer.

In construing the provisions of this Act, it was held, in *Smith* v. *Rowe*, 31 Maine, 212, that the tenancy continued till the expiration of the time specified in the notice, and that the tenant's occupation is lawful till it has elapsed. In *Dutton* v. *Colby*, 35 Maine, 505, it was decided that the notice to quit, upon which the process of forcible entry and detainer by R. S., 1841, c. 125, § 5, is founded, cannot be given before the estate at will has been first determined.

It would seem to follow, from these decisions, that the tenant would be liable for rent during the time of the notice given for the determination of his estate, whether he occupied it or not. "The statute," remarks WILDE, J., in *Creech* v. *Crocket*, 5 Cush., 133, "was intended to prevent the sudden termination of a tenancy at will, by one of the parties, against the will of the other, in cases where there was no valid agreement for its termination otherwise." The Revised Statutes of Massachusetts, enacted in 1836, c. 60, § 26, contain provisions almost identical with those of our revision of 1841, c. 95, § 19, to which Mr. Justice WILDE referred. It was decided in *Whitney* v. *Gordon*, 1 Cush., 266, that if a

tenant at will, whose rent is payable quarterly, quit the premises on a quarter day, without giving the three months previous notice of his intention, he will be liable *prima facie* for another quarter's rent.   So in *Walker* v. *Furbish*, 11 Cush., 366, it was again held that an action for use and occupation would lie against a tenant at will who had left the premises without giving due notice of his intention to terminate his tenancy.   These decisions are based upon R. S., c. 60, § 20, of Massachusetts, which corresponds, as has been before remarked, to c. 95, § 19, of our revision of 1841.

It follows, from this examination, that Larrabee, under the R. S. of 1841, is entitled to recover for a quarter's rent.

It is insisted that Larrabee, by taking the key to the store, has taken possession of the store and waived all right to notice from his tenant.

It is in proof that the tenants offered the key to Larrabee, who refused to take it; that one of them then threw it on the floor, and left; that after this, and in the absence of both of the tenants, he took it and retained it, but that the premises remained unoccupied during the residue of the term.

As the tenancy was the result of the express or implied agreement of the contracting parties, so must be its termination, unless when the notice required by statute is given. The key was offered and refused.   The tenant threw down the key and left.   The landlord, by merely taking up and preserving from loss the key left by his tenants, cannot be regarded as having assented to the termination of the tenancy. It was a mere matter of prudence, by which no rights were forfeited.   The receipt of rent is no waiver of a continuing breach of covenant.   *Doe* v. *Jones*, 5 Exch., 498.   In *Barlow* v. *Wheelwright*, 22 Verm., 88, the tenant quit possession of the premises leased, and offered to give up the key, which the landlord refused to receive; but, as the tenant left without notice and before the determination of his tenancy, he was held liable for rent.   In *Cannan* v. *Hartley*, 9 Man., Gran. & Scott, 635, (67 E. C. L., 634,) the tenant, upon the bankruptcy of his landlord, sent the key to the office of his

official assignee, where it was left with his clerk, and immediately left possession of the premises, and no further communication took place. This was held not to amount to a surrender by act of law. "I am of opinion," says WILDE, C. J., in the case just referred to, "that there was no evidence of a surrender and acceptance, which could have been properly left to the jury." "But it is said," remarks MAULE, J., "that conduct of the official assignee in not returning the key amounted to an acceptance of it. I do not think the official assignee was bound to seek out the tenant for the purpose of rendering back the key." The taking up of the key, when thrown down, was no more a waiver of notice in this case, than was the entering and shutting the door of the premises which the tenant had abandoned, in *Walker* v. *Furbish*, 11 Cush., 366. So, in *Townsend* v. *Alvers*, 3 E. D. Smith, (N. Y.,) 147, it was held that, if a tenant quits the premises during the term, and the landlord accepts the key, stating that he receives the key, but not the premises, it will not be held as an acceptance of the surrender.

But it is urged that the law has been changed, in the revision of our statutes in 1857, and that it now is as it was prior to the revision of 1841 and the new provisions of R. S., c. 95, §§ 19, 20, relating to the determination of tenancies at will, and that, under the existent legislation, tenancies at will are determinable without notice, and at the will of either party. Such we regard the law, as established by the revision of 1857.

Chapter 95 of R. S., 1841, is entitled "of estates in dower and by curtesy *and at will*." Chapter 103, in the revision of 1857, is headed—"estates in dower and by curtesy and actions of dower." No reference is made therein to estates at will, and no section corresponding to R. S., 1841, c. 95, § 19, is to be found.

The provisions on the subject of forcible entry and detainer are found in R. S., 1857, c. 94. The second section is a reënactment of the statute of 1849, c. 98, which provided for the maintenance of the process of forcible entry and detainer,

although the relation of landlord and tenant did not subsist between the parties; and of the statute of 1853, c. 39, § 1, which relates to the termination of a tenancy at will, on the part of the landlord. These Acts, embodied by the revision in R. S., 1857, c. 94, § 2, have relation to the process of forcible entry and detainer alone, and have nothing to do with the determination of tenancies at will *by either party,* upon notice in writing.

Though R. S., 1857, c. 94, is headed—"Forcible Entry and Detainer—Tenancies"—yet no provisions are found therein for the determining tenancies at will, by notice in writing, by either party, as was the case by R. S., 1841, c. 95, § 19. It merely gives the landlord rights, and provides what he may do preparatory to bringing the process of forcible entry and detainer. Though reference in the margin is made to R. S., 1841, c. 95, § 19, yet c. 94 of R. S., 1857, contains none of its provisions, nor does it provide in any way for the determination of estates at will. Nor are any provisions corresponding to those of R. S., 1841, c. 95, § 19, to be found in the last revision. Consequently, tenancies at will are now as they were before the revision of 1841.*

The claim of Larrabee for rent, therefore, if it were to be determined by the existing law on the subject, cannot be maintained. But his right of action accrued in 1855, and the original action, now sought to be reviewed, was commenced Sept. 22, 1856, and before the revision of 1857 became the law of the State. It is therefore saved from the operation of the change of the law, by the express terms of the repealing Act of 1857, by § 2 of which, the Acts declared to be repealed "remain in force * * for the preservation of all rights and their remedies existing by virtue of them; and, so far as they apply to any office, trust, judicial proceeding, right, contract, limitation or event, already affected by them."

The original action was brought to recover the rent for half a year. The plaintiff in that suit had a legal claim for a quarter's rent only. He took judgment on default for

---

* Vide c. 199 of laws of 1863.— *Reporter.*

double the amount to which he was entitled, and thus necessitated a review. on the part of these petitioners, for the protection of their rights. As they were entitled to their review, so they are equally entitled to recover the costs incidental to its prosecution.

The writ of review is to issue, unless the defendant in review indorse on the execution by him obtained, the sum of sixty-two dollars and fifty cents, and interest from the date of the original action, and pay the costs of this petition.

TENNEY, C. J., RICE, CUTTING, MAY and KENT, JJ., concurred.