### Sarah M. Palmer v. Sherman A. Myers.

1.   LANDLORD AND TENANT—*Consent to a Surrender May be Inferred from a Re-letting.*—A surrender of demised premises may be inferred from the fact that the landlord, after the vacation of the premises by the tenant, rented them to another.

Distress for Rent.—Appeal from the Circuit Court of De Witt County; the Hon. WILLIAM G. COCHRAN, Judge, presiding.   Heard in this court at the May term, 1898.   Affirmed.   Opinion filed December 2, 1898.

TIPTON & TIPTON and CHAS. R. ADAIR, attorneys for appellant.

MOORE, WARNER & LEMON and FRANK K. LEMON, attorneys for appellee.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

This was a distress proceeding commenced in the Circuit Court of De Witt County, by the appellant against the appellee to recover $1,504 as rent due her for 1897 on 320 acres of land demised by her to him.   The appellee, by plea, denied owing any rent as claimed, and a trial was had by the court, a jury being waived.

The court found there was $23.22 rent due for the year 1896, and gave judgment for that amount.   The appellant brings the case to this court by appeal and urges us to

reverse the judgment on the grounds that the finding and judgment is for too small an amount under the evidence, and that the court erred in its rulings on the propositions of law submitted by the parties.

The evidence shows that on the day of its date the parties to this proceeding entered into the following lease, to wit :

" This agreement, made this 22d day of October, 1895, witness—That Sarah M. Palmer has this day leased to Sherman Myers, the south ½ of Section (35) Town (19) N., Range 3 E., for the term of three years, or so long as all parties agree, beginning the first day of March, 1896, and ending March 1st, 1899.   Upon these express conditions :

First.    That he will occupy said land with his family and will not underlet the dwelling or any part thereof.

Second.    That he will cultivate all said land not seeded to grass in a good farmer-like manner and by rotation of crops; and cut and trim all hedges by April 1st of each year.    Also trim in the fall and burn all brush and preserve all the trees from injury by stock or otherwise and trim the same.

Third.    That he will cut all cockle-burrs and other noxious weeds out of the corn in August of each year; also mow all lots and next the hedge rows, and on the streets, so no weeds or burrs go to seed, and destroy by mowing and burning or plowing all cockle-burrs on stubble not seeded to grass by September 1st of each year.

Fourth.    That he haul out and spread on the fields all manure from the barn and lots and keep all clean and the wind pump in repair.

Fifth.    That he will keep the tile outlet clean and open and work the road tax each year and give Palmer a receipt for the same by October 1st.

Sixth.    That he will stack all straw in lots and feed out on the farm and in no wise burn the same.

Seventh.    That he will leave on the farm, at the expiration of this lease, as many acres of grass as he finds on the farm when he takes possession, free of expense to Palmer, and will preserve at all times in grass, the fifteen acres around the house and the southwest corner of the farm, also keep one forty acres in meadow.

Eighth.    He further agrees to keep in good repair all fences and gates, and doors on the barn, and preserve the house and yard and buildings from injury, as far as possible.

And in making repairs and improvements that he will do
all hauling and work free of charge to Palmer; she furnish-
ing such material as her judgment dictates, in keeping up
repairs on the farm.

9th.  That Sherman Myers is to pay Sarah M. Palmer
one thousand five hundred and four dollars ($1,504) yearly
as rent and as per notes one, two and three thereto attached.
No. 1 payable March 1st, 1896; No. 2 payable March 1st,
1897, and No. 3 payable March 1st, 1898.

10th.  Palmer agrees to defend the title to such land dur-
ing this lease and Myers binds himself to give peaceable
possession at its expiration, or in default of its terms, or
non-payment of rents herein specified.

Witness our hand and seal.

S. A. MYERS.  (SEAL.)
SARAH M. PALMER. (SEAL.)"

On March 1, 1896, the appellee took possession of the 320
acres described in the lease, and paid on that date a part of
the note numbered one in the lease, and continued to occupy
the farm until March 1, 1897, paying during that time all
of the first note except a small balance which amounted on
the day of the trial to $23.22.   Some time in February, 1897,
the appellee notified the appellant by letter that he was
going to surrender to her the farm on March 1, 1897, and
cancel the lease, claiming he had a right to do so under the
terms of the lease, which were that the farm was leased to
him "for the term of three years, or so long as all parties
agree;" and insisted that the reason he desired to do so
was, he could not afford to pay as much rent as the lease
called for.   The appellant made no answer herself to this
notice, as she was absent from the county at the time, but
her son, who attended to her business in her absence,
had a talk with the appellee during February, 1897, about
his leaving the place and throwing up his lease, and his right
to do so under the terms of the lease; and there is a conflict
in the evidence as to whether the son did or did not consent
to the appellee throwing up his lease and leaving on March
1, 1897; but it does appear that appellant, on March 2, 1897,
in pursuance of verbal negotiations had in February, 1897,
leased this farm to one George Gambrel for one year, com-
mencing February 28, 1897, for a cash rent of $880 and a

part of the crops to be grown upon the farm; and that on March 15, 1897, Gambrel took possession of the farm under the lease and has been farming it ever since.   On August 26, 1897, the appellant made another lease of the farm to Gambrel for one year, beginning March 1, 1898, for a rental of $1,280 for that year.   The evidence further shows that the appellant, through her son (who she says " acts for her in her absence, and whose acts she always indorsed "), offered to lease the farm to several others in February, 1897, for the year commencing March 1, 1897, before she leased it to Gambrel, providing Myers would get off; and in fact the evidence strongly tends to show that the appellant, in February, 1897, seemed willing to have the appellee give up the farm so she could rent it to some one else; and we are satisfied that the learned judge who tried this case was justified by the evidence in holding as he did, that the appellant consented to the appellee surrendering possession of the farm at the end of the first year of the term named in the lease; and accepting the possession of the farm after said first year and renting it to another tenant without any claim at the time that she would still hold the appellee under the lease, and accepting rent from the new tenant, amounted in law to a surrender of the unexpired term and a release of the appellee from the payment of any further rent under the lease sued on, except as to the balance due on the first year's rent.   See Stobie et al. v. Dills, 62 Ill. 432, and Williams v. Vanderbilt, 145 Ill. 238.   As to the rulings of the trial court on the propositions of law submitted to it, we think on the whole that the appellant ought not to complain, inasmuch as the rulings were as favorable to her as the law permits.   Finding no reversible error in this record we affirm the judgment of the Circuit Court in this case.   Judgment affirmed.